UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKY JEANNETTE SIEGRIST,                    Case No. 14-14436

               Plaintiff,                   Thomas L. Ludington
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Stephanie Dawkins Davis
                                             United States Magistrate Judge
               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)**

I.    **PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On November 19, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L. Ludington referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for benefits. (Dkt. 3). This matter was reassigned to the undersigned Magistrate Judge on January 5, 2016, pursuant to administrative order. (*See* Text-Only Order dated January 5, 2016). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 11, 14).

B.      Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income on January

27, 2012, alleging disability beginning January 6, 2012.  (Dkt. 9-2, Pg ID 42).

Plaintiff's claim was initially disapproved by the Commissioner on May 9, 2012.

*Id*.  Plaintiff requested a hearing and on February 6, 2013, plaintiff appeared,

along with her attorney, before Administrative Law Judge (ALJ) Kevin J.

Detheridge, who considered the case de novo.  (Dkt. 9-2, Pg ID 42-56).  In a

decision dated May 21, 2013, the ALJ found that plaintiff was not disabled.  *Id*.

Plaintiff requested a review of this decision on July 24, 2013.  (Dkt. 9-2, Pg ID

37).  The ALJ's decision became the final decision of the Commissioner when,

after the review of additional exhibits,[1] the Appeals Council on September 18,

2014, denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 27-29); *Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1959 and was 53 years old on the date the application

was filed.  (Dkt. 9-2, Pg ID 55).  The ALJ applied the five-step disability analysis

to plaintiff's claim and found at step one that plaintiff had not engaged in

substantial gainful activity since the application date.  (Dkt. 9-2, Pg ID 44).  At

step two, the ALJ found that plaintiff's low back pain, hypothyroidism status post

thyroidectomy, orthostatic hypotension, depression, anxiety, and post-traumatic

stress disorder were "severe" within the meaning of the second sequential step.  *Id*.

At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 9-2, Pg ID

45).  The ALJ determined that plaintiff had the following residual functional

capacity ("RFC"):

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 416.967(b)
> except she is limited to standing or walking for two
> hours of a standard eight-hour workday. The claimant
> can never climb ladders, ropes, or scaffolds.
> Furthermore, the claimant must avoid concentrated
> exposure to pulmonary irritants such as dusts, fumes,
> gases, odors, and poorly ventilated areas. The claimant

> must also avoid exposure to hazardous work conditions
> such as dangerous moving machinery and unprotected
> heights. Additionally, the claimant can perform work that
> is simple, routine, and repetitive in an environment free
> of fast-paced production requirements involving only
> simple work-related decisions and routine workplace
> changes. The claimant can have occasional contact with
> supervisors and coworkers, but no contact with the
> general public.

(Dkt. 9-2, Pg ID 47).  At step four, the ALJ concluded that plaintiff could not

perform her past relevant work as a home attendant.  (Dkt. 9-2, Pg ID 54).   At step

five, the ALJ denied plaintiff benefits because plaintiff could perform a significant

number of jobs available in the national economy.  *Id.*

   B.   Plaintiff's Claims of Error

   Plaintiff first argues that the ALJ failed to properly follow *Drummond* and

Acquiescence Ruling 98-4(6), which require the ALJ to determine if there is new

and material evidence to support a departure from a prior determination of a

claimant's RFC.  According to plaintiff, the ALJ does not cite the new and

material evidence he used to reach his decision.  Plaintiff contends that the ALJ

fails to give sufficient credence to the prescription of the wheelchair for plaintiff

along with the home hospital bed and walker.

   Plaintiff also asserts that the ALJ decision regarding her RFC is not

supported by substantial evidence.  Plaintiff points to various medical records

regarding her leg numbness, difficulty walking, back pain, and use of a cane,

4

along with her spinal CT and x-ray results.  Plaintiff also relies on the report of the consultative examiner, who noted that she could not perform several of the requested maneuvers.  Finally, plaintiff points out that she is in a wheelchair and her care giver states that she cannot take care of her daily needs.  Thus, plaintiff maintains that at most, she has the RFC to do sedentary work, which would render her disabled under the Medical-Vocational Guidelines, based on her age and educational level.

Plaintiff argues that the ALJ did not give appropriate weight to the opinions of her treating physicians.  In particular, plaintiff points to Dr. Rodriguez's opinions.  Plaintiff asserts that the opinion of Dr. Jerry Evans should not have been given significant weight because he never examined plaintiff.

Lastly, plaintiff argues that the ALJ did not consider how the pain from her impairments affects her ability to function.  According to plaintiff, the medical records show that she suffers from pain that would affect her RFC by causing her to be off task and require more time off than allowed by an employer.

C.    The Commissioner's Motion for Summary Judgment

In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), the Sixth Circuit concluded that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent a change in circumstances."  In adjudicating

claims under this ruling

> adjudicators must adopt such a finding from the final
> decision by an ALJ or the Appeals Council on the prior
> claim in determining whether the claimant is disabled
> with respect to the unadjudicated period unless there is
> new and material evidence relating to such a finding or
> there has been a change in the law, regulations or rulings
> affecting the finding or the method for arriving at the
> finding.

AR 98-4(6), 1998 WL 283902 at *3. Here, the ALJ noted that plaintiff filed a

prior application and was found not disabled pursuant to an ALJ decision dated

January 5, 2012. (Dkt. 9-3, Pg ID 125- 127). The ALJ explained that the prior

decision found plaintiff capable of a reduced range of unskilled light work (Dkt. 9-

3, Pg ID 129), but found that the record contained new evidence which provided a

basis for a different RFC finding. The ALJ, therefore, concluded that there was

significant new and material evidence to justify not adopting the prior ALJ's RFC.

On the one hand, plaintiff characterizes this rationale as a violation of

*Drummond* and AR 98-4(6), contending that, because the ALJ did not specifically

cite the new evidence, that warranted different findings in that paragraph. On the

other hand, the Commissioner contends that the ALJ discussed a considerable

body of evidence that post-dated the previous ALJ decision of January 5, 2012,

and explained how he evaluated that evidence in arriving at his RFC finding.

(Dkt. 9-2, Pg ID 44, 48-53). According to the Commissioner, the ALJ's decision

implicitly identifies the new and material evidence such that the reader can trace the ALJ's reasoning. *Accord*, *Brock v. Comm'r of Soc. Sec.*, 368 Fed.Appx. 622, 625 (6th Cir. 2010) ("[T]he administrative law judge's findings challenge the supportability and consistency of Dr. Moore's diagnoses with the other evidence in the record in an indirect but clear way ... ."); *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006) (discussed in *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 748-49 (6th Cir. 2006)) ("The ALJ implicitly provided sufficient reasons for not giving those opinions controlling weight, and indeed for giving them little or no weight overall."); *Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 725 (6th Cir. 2004) ("Although the ALJ did not specify her logic, the influence of each doctor's opinion on her decision comports with 20 C.F.R. § 404.1527(d)[.]").  The Commissioner asserts that plaintiff cites no authority that this level of articulation is substantively insufficient.

More significantly, according to the Commissioner, plaintiff fails to discuss how the ALJ's RFC finding differs from that of the previous ALJ decision. Contrary to plaintiff's argument, the Commissioner contends that the ALJ's decision in the present case is, if anything, more restrictive.  Most notably, the ALJ's RFC in the present decision adds a limitation to standing or walking for only two hours of a standard eight-hour workday (compare Dkt. 9-2, Pg ID 47 with Dkt. 9-3, Pg ID 129 ). While the language describing the other limitations in

7

the two RFCs is not identical, these restrictions nevertheless track one another

closely and appear to be substantively the same.  In any event, plaintiff makes no

argument that the ALJ improperly deviated from the previous RFC or made it less

restrictive and it appears that any such deviation was in plaintiff's favor.  As such,

the Commissioner asserts that plaintiff cannot show any harm in the ALJ's

deviation from the previous RFC finding.  *See Shinseki v. Sanders*, 556 U.S. 396,

409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon

the party attacking the agency's determination.").

Thus, according to the Commissioner, it appears the essence of plaintiff's

argument is that the ALJ did not deviate far enough from the previous RFC.  On

this point, plaintiff simply asserts that the new evidence warrants an even more

restrictive RFC finding, citing the prescription of a wheelchair by Alexander

Rodriguez, M.D. (Dkt. 9-8, Pg ID 659), another treating source stating that

plaintiff needed a wheelchair (citing Dkt. 9-7, Pg ID 491), and statements from Dr.

Rodriguez that plaintiff would benefit from an in-home hospital bed and walker.

(Dkt. 9-8, Pg ID 658).  According to the Commissioner, plaintiff's citation of this

evidence is unavailing, because the ALJ discussed this evidence at length and

explained why it did not warrant a more restrictive RFC finding.  (Dkt. 9-2, Pg ID

48-52).

In this same vein, the Commissioner maintains that the "the overwhelming

evidence" relied on by plaintiff – namely, several records from Dr. Rodriguez (Dkt. 9-7, Pg ID 491; Dkt. 9-8, Pg ID 658-659), Christopher Quinn, D.O. (Dkt. 9-7, Pg ID 445-446; Dkt. 9-7, Pg ID 462-463), Christopher Prince, M.D. (Dkt. 9-8, Pg ID 726-728), and consultative examiner Siva Sankaran, M.D. (Dkt. 9-8, Pg ID 856-869), in addition to imaging studies (Dkt. 9-7, Pg ID 462-463; Dkt. 9-8, Pg ID 689), as well as her testimony concerning her use of a wheelchair and her ability to do daily activities (*see* Dkt. 9-2, Pg ID 79-84; 89, 91, 95-96), and her sister's testimony (Dkt. 9-2, Pg ID 97-111) – does not warrant greater restrictions than those the ALJ assessed.  Indeed, according to the Commissioner, the ALJ thoroughly addressed all the evidence cited by plaintiff.  Specifically, the ALJ explained that, while Dr. Rodriguez provided plaintiff with a prescription for a wheelchair, he did not provide any narrative explanation regarding the reason for that prescription or indicate whether it would be necessary to use it on an ongoing basis.  (Dkt. 9-2, Pg ID 48; Dkt. 9-8, Pg ID 659). Likewise, the ALJ noted that, while Dr. Quinn observed in January 2012 that plaintiff presented walking with a cane and with bilateral paravertebral spasms, he also noted that she exhibited a full range of motion in all extremities, with normal muscle strength and no lower extremity weakness, motor deficit, or sensory deficit.  (Dkt. 9-2, Pg ID 48; Dkt. 9-7, Pg ID 446).  The ALJ also noted (Dkt. 9-2, Pg ID 48-49) that a CT scan of plaintiff's lumbar spine showed mild lumbar spondylosis, mild bilateral foraminal

narrowing at L4-5, posterior disc bulging at L4-5 and L5-S1, and left L5 pars

defect (Dkt. 9-7, Pg ID 462-463), and that Dr. Quinn diagnosed chronic

lumbosacral pain.  (Dkt. 9-7, Pg ID 446).  The ALJ pointed out that, on follow-up

in February 2012, Dr. Rodriguez stated plaintiff had tenderness in her back and

was using a cane to walk, assessed her with chronic fatigue, and provided a

prescription for a walker.  (Dkt. 9-7, Pg ID 373; Dkt. 9-8, Pg ID 660).

As the ALJ observed (Dkt. 9-2, Pg ID 49) that, when plaintiff returned to

the emergency department in March 2012 complaining of back and leg pain,

intake notes revealed that she retained normal ambulatory status and was able to

move all of her extremities.  (Dkt. 9-7, Pg ID 428).  X-rays of the lumbosacral

spine obtained at this time were unremarkable, with well-maintained disc spaces

and no spondylosis.  (Dkt. 9-7, Pg ID 437).  She was assessed with low back strain

and left hip strain.  (Dkt. 9-7, Pg ID 428).  Two months later, in May 2012,

plaintiff returned to the urgent care clinic after dropping a 60-pound ladder on her

ankle and twisting her back.  (Dkt. 9-8, Pg ID 726).  Dr. Prince noted tenderness,

pain, and spasm of the lower back, but further noted that there was no swelling or

deformity, and assessed plaintiff with low back pain.  (Dkt. 9-8, Pg ID 727).  The

ALJ noted (Dkt. 9-2, Pg ID 49) that in July 2012, Dr. Rodriguez wrote a letter to

plaintiff's insurance provider stating that "she would greatly benefit from having

an in-home hospital bed and walker for stability."  (Dkt. 9-8, Pg ID 658).  Two

10

months later, plaintiff was referred for a course of occupational therapy for her back pain, but she refused services and requested discharge after a single appointment due to alleged allergy symptoms.  (Dkt. 9-8, Pg ID 784; 796-813).

X-rays of the lumbar spine from October 2012 demonstrated only mild to moderate facet arthropathy of the lower lumbar spine and mild disc space narrowing at L5-S1, but no acute fracture or subluxation.  (Dkt. 9-8, Pg ID 689). While Dr. Rodriguez continued to assess low back pain from October to November of 2012, and he noted tenderness in her back (Dkt. 9-8, Pg ID 773-783), the ALJ noted that it did not appear that plaintiff sought further back treatment after November 2012.

The ALJ also noted (Dkt. 9-2, Pg ID 49) that plaintiff presented to the consultative examination with Dr. Sankaran in March 2013 in a wheelchair.  (Dkt. 9-8, Pg ID 856).  While Dr. Sankaran stated plaintiff refused to try several examination maneuvers because she said she could not do it (Dkt. 9-8, Pg ID 858), the Commissioner points out that he also stressed that the communication with her was not very good, and that she "was not very good at giving history because she was switching things back and forth."  (Dkt. 9-8, Pg ID 856).  The ALJ also acknowledged (Dkt. 9-2, Pg ID 49) plaintiff's testimony that she would stay in her at-home hospital bed for 85 percent of every day (Dkt. 9-2, Pg ID 83), that she had been using a prescription wheelchair for over a year, and that her doctors told her

11

that she could never leave it.  (Dkt. 9-2, Pg ID 91; Dkt. 9-8, Pg ID 856).

According to the Commissioner, the ALJ's reasoning that this testimony is

inconsistent with the record is supported by substantial evidence, given the lack of

any medical evidence in the record supporting plaintiff's claim that her treating

providers advised her to use a wheelchair at all times.  (Dkt. 9-2, Pg ID 49).  The

Commissioner also points out how the ALJ reasoned that because Dr. Rodriguez

subsequently prescribed not only a walker, but occupational therapy, he did not

intend for plaintiff to remain in a wheelchair at all times.  (Dkt. 9-2, Pg ID 49-50).

Similarly, the ALJ contrasted plaintiff's testimony that her doctors told her that

she was not a candidate for physical therapy, epidural injections, or surgery (Dkt.

9-2, Pg ID 92-93) with the fact that plaintiff personally chose to discontinue her

occupational therapy, and that the record lacks any referral to a pain specialist or

surgeon.  (Dkt. 9-2, Pg ID 50).

The Commissioner also maintains that, in considering the evidence of

record as a whole, the ALJ appropriately determined that plaintiff's allegations

were not entirely credible.  (Dkt. 9-2, Pg ID 51-52).  On this point, the ALJ noted

inconsistent statements made throughout the record, including those noted above,

as well as the inconsistent history provided to Dr. Sankaran.  The ALJ further

noted that plaintiff presented as calm, collected, and well-spoken at the hearing

even though she testified that she was experiencing 10 out of 10 pain.  (Dkt. 9-2,

Pg ID 84-85).  The ALJ further noted that plaintiff's statement that she engaged in no daily activities and that her sister took care of all of her needs was implausible. (Dkt. 9-2, Pg ID 52).  The ALJ contrasted this with the significantly less limited level of daily activities reported during plaintiff's prior period of adjudication, which included independently maintaining her daily activities, doing laundry, socializing with several close friends, and walking up to six miles at a time.  (Dkt. 9-2, Pg ID 52; Dkt 9-3, Pg ID 128; Dkt. 9-7, Pg ID 338-339). Additionally, as of September 2011, four months prior to her alleged onset date of disability, plaintiff reported being independent with all of her activity of daily living.  (Dkt. 9-7, Pg ID 593).  The ALJ further noted that, even after her alleged onset date, there was evidence of her engaging in activities not expected of one who is permanently wheelchair-bound, including pulling out rose bushes (Dkt. 9-8, Pg ID 723) and carrying a 60-pound ladder.  (Dkt. 9-8, Pg ID 726).

The Commissioner points to other questions the ALJ noted regarding plaintiff's credibility, including that the objective medical evidence and clinical examination findings do not corroborate her allegations of significant limitations. (Dkt. 9-2, Pg ID 52).  The ALJ noted a lack of medical treatment relative to her allegations; relatively infrequent medical appointments since her alleged onset date of January 2012; and her failure to follow up on recommendations by her doctors (such as occupational therapy), suggesting she might not be as limited as

alleged.  (Dkt. 9-2, Pg ID 52). The ALJ further noted that none of plaintiff's treating sources placed a work-related limitation on her with respect to staying in a wheelchair, which might have been expected had they told her never to leave her wheelchair, as she alleged (Dkt. 9-2, Pg ID 52).

The Commissioner also argues that the ALJ properly took under consideration statements made by plaintiff's sister, who served as her "care giver," noting that they generally corroborated plaintiff's statements, but were given little weight, due to the close relationship between plaintiff and her sister, as well as the fact that the evidence did not suggest plaintiff's treating providers advised her that she requires a care giver.  (Dkt. 9-2, Pg ID 53-54).  According to the Commissioner, plaintiff neither addresses the ALJ's rationale in evaluating the evidence nor provides any argument as to how this treatment of the evidence is deficient.  Rather, the Commissioner asserts, plaintiff simply cites certain pieces of evidence and blanketly asserts that they support her allegations, without acknowledging the greater context of the evidentiary record.  Without more, the Commissioner maintains that plaintiff has done nothing to undermine the ALJ's evidentiary support and rationale for his RFC finding.  *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[Issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quoted in *Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. Appx. 464, 466 (6th Cir.

2003)).

Plaintiff argues that the ALJ did not properly weigh the opinion evidence provided by her treating physicians, in particular that of Dr. Rodriguez, contending that they should have been given controlling weight.  The Commissioner contends, however, that plaintiff does not specifically reference any opinion in the record, and it does not appear that Dr. Rodriguez provided any opinion with respect to plaintiff's functional limitations.  According to the Commissioner, it does not appear that any of plaintiff's treating sources rendered opinions with respect to her functional limitations.  To the extent that plaintiff means to refer to Dr. Rodriguez's prescription of a walker and a wheelchair, the Commissioner maintains, as set forth above, that the ALJ properly addressed this evidence.

With respect to examining opinions indicating greater restrictions, the Commissioner contends that the ALJ properly explained his rejection of the opinion provided by Dr. Sankaran, who stated plaintiff could not stand, climb stairs, bend, stoop, or squat.  (Dkt. 9-2, Pg ID 53).  Specifically, the ALJ gave little weight to this opinion because Dr. Sankaran cautioned that he did not have the opportunity to examine plaintiff's functional capacities due to her presentation, and as a result, he relied heavily on plaintiff's subjective allegations uncritically. (Dkt. 9-2, Pg ID 53; Dkt. 9-8, Pg ID 856-859).  In contrast, the ALJ supportably

discounted the reliability of plaintiff's subjective complaints. (Dkt. 9-2, Pg ID 53).

The ALJ also explained his rejection of the opinion provided by consultative examiner Michael Brady, Ph.D., in April 2011 (Dkt. 9-2, Pg ID 53), who opined that plaintiff would have a poor ability to: interact and relate with others, including supervisors and coworkers; maintain concentration and understand, recall, and complete tasks and expectations; and withstand the normal stressors associated with a workplace setting. (Dkt. 9-7, Pg ID 340). Dr. Brady also filled out two medical source statement forms indicating that plaintiff had moderate to marked limitations in all areas. (Dkt. 9-7, Pg ID 341-346). The Commissioner points out, however, that, as the ALJ explained, Dr. Brady identified examination findings on his opinion forms that were different from the examination findings in his narrative report (compare Dkt. 9-7, Pg ID 337-340 with Dkt. 9-7, Pg ID 341-346), thus rendering it unreliable due to internal inconsistencies. (Dkt. 9-2, Pg ID 53). Further, the ALJ noted that this opinion was without substantial support from the medical evidence and the record as a whole. (Dkt. 9-2, Pg ID 53). The ALJ also noted that Dr. Brady's opinion was rendered two years prior to the decision, and therefore, he did not have the benefit of a more fully developed record.

According to the Commissioner, plaintiff has not challenged the ALJ's

16

rationale with respect to the evaluation of either Dr. Brady's opinion or Dr. Sankaran's opinion. While plaintiff challenges the ALJ's reliance on the opinion provided by State agency medical consultant Jerry Evans, M.D., the only articulated basis for this challenge is that Dr. Evans examined plaintiff only once, and his opinion is not supported by the record. The Commissioner points out that Dr. Evans, as medical consultant, did not actually examine plaintiff. But in any event, the Commissioner maintains that plaintiff's bare assertion that Dr. Evans' opinion is not supported by the record is insufficient to overcome the ALJ's rationale on this point. The ALJ, who provided a thorough discussion of the medical evidence of record (*see* Dkt. 9-2, Pg ID 48-53), explained that he gave great weight to Dr. Evans' opinion both because it was consistent with the record, and because Dr. Evans was an experienced medical consultant who was familiar with the Social Security Act and pertinent regulations. (Dkt. 9-2, Pg ID 52-53). The Commissioner points out that an examining opinion can outweigh a treating physician opinion in some circumstances. *See* SSR 96-6p. And notably, here, there was <u>no</u> treating physician opinion. *See Watts v. Comm'r of Soc. Sec.*, 179 Fed. Appx. 290, 294 (6th Cir. 2006) ("[N]one of Watts's treating doctors during the relevant period ... made detailed functional capacity analyses, which leaves the functional capacity forms from the medical reviewers as the best evidence."). Thus, absent any specific challenge from plaintiff, the Commissioner asserts that

the ALJ properly relied on Dr. Evans' opinion.  *See Elder*, 90 F.3d at 1118.

Lastly, plaintiff contends that the ALJ did not consider how the pain from her impairments affected her ability to function, violating 20 C.F.R. § 416.929 and SSR 95-5p.  In support of this argument, plaintiff refers to some medical evidence in the record as well as unspecified diagnostic tests that she claims substantiate her complaints of extreme pain, and "numerous records where she presented to the emergency department complaining of pain." (P. Br. at 4).  According to the Commissioner, plaintiff provides no citations to any of this evidence, does she specify to which "diagnostic tests" she refers.  In any event, the Commissioner maintains that the ALJ provided a thorough credibility discussion, as consistent with the governing regulations, and specifically discussed plaintiff's alleged pain. (Dkt. 9-2, Pg ID 51-52).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

18

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

19

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

20

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do

22

> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

 "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

1.   Sufficiency of plaintiff's briefing

Although the undersigned has thoroughly reviewed the record evidence, the

parties' submissions, and the ALJ's decision, plaintiff cannot simply make the

bald claims that the ALJ erred, while leaving it to the Court to scour the record to

support this claim.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.

1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived.  It is not sufficient for a

party to mention a possible argument in a most skeletal way, leaving the court to ...

put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010

WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted). In the view of the undersigned, all of plaintiff's arguments are wholly insufficient and undeveloped. Plaintiff fails to offer any basis for the Court to conclude that the ALJ's decision is not supported by substantial evidence, and offers no factual or legal basis for the Court to conclude that the ALJ committed reversible error of any sort. Thus, the undersigned concludes that plaintiff has failed to identify or properly develop any support for a reversible error and her motion for summary judgment should be denied on this basis. In the alternative, the undersigned will address the substantive issues that appear to have been identified in plaintiff's briefing.

### 2. *Drummond*

Plaintiff's reliance on *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, (6th Cir. 1997) is to no avail since any minor distinction between the prior and current RFCs inured to her benefit. Generally, principles of *res judicata* require that the administration be bound by a prior decision unless a change of circumstances is proven on a subsequent application. *Drummond* at 842. In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. *Drummond*, 126 F.3d at 842; *see also* 42

25

U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."). *Drummond* mandates that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 841. The Commissioner bears the burden to prove changed circumstances so as to escape being bound by the principles of *res judicata*. *Id*. at 842-43 ("We reject the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence ....  Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner."). Acquiescence Ruling 98-4(6), issued post-*Drummond*, instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding...."  The Sixth Circuit applies collateral estoppel to "preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review." *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

26

Here, in the previous decision, the ALJ found that plaintiff could:

> perform light work as defined in 20 CFR 416.967(b)
> except that she can never climb ladders, ropes, or
> scaffolds. She must avoid concentrated exposure to
> pulmonary irritants such as smoke, dust, and fumes. She
> must avoid all exposure to workplace hazards such as
> moving machinery and unprotected heights. She can
> perform simple, routine, and repetitive tasks in a low
> stress environment, meaning no more than occasional
> changes in a routine work setting. She can occasionally
> interact with supervisors and coworkers. She should
> never interact with the general public.

(Dkt. 9-3, Pg ID 129).  In the decision currently before the Court, the ALJ found

that plaintiff could

> perform light work as defined in 20 CFR 416.967(b)
> except she is limited to standing or walking for two
> hours of a standard eight-hour workday. The claimant
> can never climb ladders, ropes, or scaffolds.
> Furthermore, the claimant must avoid concentrated
> exposure to pulmonary irritants such as dusts, fumes,
> gases, odors, and poorly ventilated areas. The claimant
> must also avoid exposure to hazardous work conditions
> such as dangerous moving machinery and unprotected
> heights. Additionally, the claimant can perform work that
> is simple, routine, and repetitive in an environment free
> of fast-paced production requirements involving only
> simple work-related decisions and routine workplace
> changes. The claimant can have occasional contact with
> supervisors and coworkers, but no contact with the
> general public.

(Dkt. 9-2, Pg ID 47).  As the Commissioner points out, the RFC in the current

decision appears to be *more* restrictive than in the prior decision.  The ALJ's RFC

27

in the present decision adds a limitation to standing or walking for only two hours of a standard eight-hour workday. (Dkt. 9-2, Pg ID 53; Dkt. 9-3, Pg ID 129). The undersigned agrees with the Commissioner that while the language describing the other limitations in the two RFCs is not identical, both sets of restrictions track closely and are substantively the same. Importantly, as the Commissioner points out, plaintiff fails to develop any argument that the ALJ improperly deviated from the previous RFC or made it less restrictive. Thus, plaintiff has not shown any harm in the ALJ's deviation from the previous RFC finding. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). For these reasons, the undersigned concludes that plaintiff's claimed *Drummond* error has no merit.

### 3.    RFC/Credibility/Pain

Plaintiff also claims that the ALJ's credibility analysis is flawed and is not based on a proper characterization of record evidence. However, credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir.

28

2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his

pain are credible.  SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R.
§ 416.929.  Consistency between the plaintiff's subjective complaints and the
record evidence 'tends to support the credibility of the [plaintiff], while
inconsistency, although not necessarily defeating, should have the opposite
effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir.
2011).

The undersigned agrees with the Commissioner that the ALJ's decision
regarding plaintiff's credibility, the impact of the credible limitations caused by
pain, and the ultimate RFC findings are supported by substantial evidence.  The
medical evidence does not support the extensive limitations claimed by plaintiff.
For example, while Dr. Quinn observed in January 2012 that plaintiff presented
walking with a cane and with bilateral paravertebral spasms, he also noted that she
exhibited a full range of motion in all extremities, with normal muscle strength
and no lower extremity weakness, motor deficit, or sensory deficit.  (Dkt. 9-2, Pg
ID 48; Dkt. 9-7, Pg ID 446).  The CT scan of plaintiff's lumbar spine showed mild
lumbar spondylosis, mild bilateral foraminal narrowing at L4-5, posterior disc
bulging at L4-5 and L5-S1, and left L5 pars defect, which does not support the
extreme limitations claimed by plaintiff.  (Dkt. 9-7, Pg ID 462-463).  Further, in
February 2012, Dr. Rodriguez merely stated plaintiff had tenderness in her back
and was using a cane to walk, assessed her with chronic fatigue, and provided a

prescription for a walker.  (Dkt. 9-7, Pg ID 373; Dkt. 9-8, Pg ID 660).

When plaintiff returned to the emergency department in March 2012 complaining of back and leg pain, intake notes revealed that she retained normal ambulatory status and was able to move all of her extremities.  (Dkt. 9-7, Pg ID 428).  X-rays of the lumbosacral spine obtained at this time were unremarkable, with well-maintained disc spaces and no spondylosis.  (Dkt. 9-7, Pg ID 437).  Two months later, in May 2012, plaintiff returned to the urgent care clinic after dropping a 60-pound ladder on her ankle and twisting her back.  (Dkt. 9-8, Pg ID 726).   Dr. Prince noted tenderness, pain, and spasm of the lower back, but further noted that there was no swelling or deformity, and assessed plaintiff with low back pain.  (Dkt. 9-8, Pg ID 727).  X-rays of the lumbar spine from October 2012 demonstrated only mild to moderate facet arthropathy of the lower lumbar spine and mild disc space narrowing at L5-S1, but no acute fracture or subluxation.  (Dkt. 9-8, Pg ID 689).  While Dr. Rodriguez continued to assess low back pain from October to November of 2012, and he noted tenderness in her back (Dkt. 9-8, Pg ID 773-783), it does not appear that plaintiff sought further back treatment after November 2012.

While plaintiff claimed that she would stay in her at-home hospital bed for 85 percent of every day (Dkt. 9-2, Pg ID 83), that she had been using a prescription wheelchair for over a year, and that her doctors told her that she could

31

never leave it, there is a dearth of medical evidence to support these claimed limitations.  None of her treating providers advised her to use a wheelchair at all times.  As observed by the ALJ, plaintiff's claims in this regard are actually inconsistent with the medical records because Dr. Rodriguez subsequently prescribed not only a walker, but occupational therapy, which suggests that he did not intend for plaintiff to remain in a wheelchair at all times.  (Dkt. 9-2, Pg ID 49-50).  Similarly, the ALJ appropriately contrasted plaintiff's testimony that her doctors told her that she was not a candidate for physical therapy, epidural injections, or surgery (Dkt. 9-2, Pg ID 92-93) with the fact that plaintiff personally chose to discontinue her occupational therapy, and that the record lacks any referral to a pain specialist or surgeon.  (Dkt. 9-2, Pg ID 50).

In the view of the undersigned, the ALJ appropriately determined that plaintiff's allegations were not entirely credible for several other reasons.  (Dkt. 9-2, Pg ID 51-52).  The ALJ pointed out that plaintiff presented as calm, collected, and well-spoken at the hearing even though she testified that she was experiencing 10 out of 10 pain.  (Dkt. 9-2, Pg ID 84-85).  While plaintiff claimed that she engaged in no daily activities and that her sister took care of all of her needs, the ALJ pointed out that plaintiff engaged higher level of daily activities as reported during plaintiff's prior period of adjudication, which included independently maintaining her daily activities, doing laundry, socializing with several close

32

friends, and walking up to six miles at a time.  (Dkt. 9-2, Pg ID 52; Dkt. 9-3, Pg ID 128; Dkt. 9-7, Pg ID 338-339).  Additionally, as of September 2011, four months prior to her alleged onset date of disability, plaintiff reported being independent with all of her activity of daily living.  (Dkt. 9-7, Pg ID 593).  The ALJ further noted that, even after her alleged onset date, there was evidence of her engaging in activities not expected of one who is permanently wheelchair-bound, including pulling out rose bushes (Dkt. 9-8, Pg ID 723) and carrying a 60-pound ladder.  (Dkt. 9-8, Pg ID 726).  In the view of the undersigned, the ALJ's credibility determinations and decisions regarding the impact of her pain and RFC were entirely appropriate and the ALJ carefully considered the record as a whole.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").  The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the

courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). The undersigned concludes that the ALJ's findings here are within that "zone of choice" and thus supported by substantial evidence.

4.      Opinion Evidence

Plaintiff argues that the ALJ failed to give controlling weight to her treating physician's opinions while the Commissioner asserts that the ALJ properly considered and gave appropriate weight to all medical opinions in the record. As observed by the Commissioner, there does not appear to be an opinion from any treating physician regarding plaintiff's functional limitations. Thus, plaintiff's argument is this regard is not well-founded. Plaintiff appears to rely on the prescription of a wheelchair by her treating physicians and the statements that she would benefit from an in-home hospital bed and walker to support her claim that she is restricted to sedentary work. However, as the ALJ explained, there is nothing in the record indicating that plaintiff's use of the wheelchair was required all the time as she alleges or that it was intended to be permanent. To the extent that plaintiff asserts that the ALJ inappropriately weighed the other medical opinions in the record, the undersigned finds no error, as discussed below.

As a general rule, an opinion from a medical source who has examined a

34

claimant is given more weight than that from a source who has not performed an examination, and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). However, the opinions of a one-time consultative examiner are not entitled to any particular weight, and certainly are not entitled to "controlling weight," like treating physicians, under the Commissioner's regulations. *Id.* at 376; *see also Peterson v. Comm'r of Soc. Sec.*, 552 Fed. Appx. 533, 539 (6th Cir. 2014) ("But because Dr. Catt was an examining psychologist–not a treating doctor–his opinion is not entitled to any special deference.") (citing 20 C.F.R. § 416.927(c)(2)). Rather, consulting source opinions are afforded weight according to the factors set forth in 20 C.F.R. § 416.917, including whether they are supported by objective findings, consistent with the record as a whole, and the extent of the physician's relationship to the claimant (which, in the case of an examining consultant, is only a one-time examining relationship). *See* 20 C.F.R. § 416.927(c). "Moreover, an ALJ need only explain its reasons for rejecting a treating source because such an opinion carries 'controlling weight' under the SSA," and the ALJ is not required to make that same showing for non-treating sources. *Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 433, 439 (6th Cir. 2012) (citing *Smith v. Comm'r of Soc. Sec.*, 482

35

F.3d 873, 876 (6th Cir. 2007) ("the SSA requires ALJs to give reasons for only *treating sources*") (emphasis in original)); *see also Karger v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 744 (6th Cir. 2011) (the ALJ is not "under any special obligation to defer to [non-treating physician] opinion[s] or to explain why he elected not to defer to [them]."); *Thomas v. Comm'r of Soc. Sec.*, 2013 WL 1250649, at *15 (E.D. Mich. Mar. 26, 2013) ("[An ALJ] need not give reasons for not accepting the report of a non-treating physician. . . . Dr. Menendes, as noted, was not a treating source. So Judge Patterson was under no obligation to explain why he accorded Dr. Menendes' opinion only 'some weight.'"), *aff'd* 550 Fed. Appx. 289 (6th Cir. 2014). "An ALJ is permitted to make . . . resolutions of conflicting evidence, and there is no specific requirement that this type of decision be set forth in the same type of detail required when rejecting the opinion of a treating source." *Jones v. Comm'r of Soc. Sec.*, 2012 WL 5378850, at *5 (S.D. Ohio Oct. 30, 2012), *adopted by* 2013 WL 556208 (S.D. Ohio Feb. 12, 2013). The ALJ is responsible for weighing opinion evidence. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). While the ALJ may not simply ignore the opinions of non-treating

36

sources, as long as the record contains substantial evidence supporting the ALJ's evaluation of such an opinion, that evaluation cannot be second-guessed by a reviewing court.

As noted by the Commissioner, plaintiff has not challenged the ALJ's rationale with respect to the evaluation of either Dr. Brady's opinion or Dr. Sankaran's opinion.  Thus, plaintiff has waived any claim of error in this regard.

While plaintiff challenges the ALJ's reliance on the opinion provided by State agency medical consultant Jerry Evans, M.D., the only articulated basis for this challenge is that Dr. Evans examined plaintiff only once, and his opinion is not supported by the record.  The Commissioner correctly points out that Dr. Evans, as medical consultant, did not actually examine plaintiff.  The undersigned agrees with the  Commissioner that plaintiff has not sufficiently supported any claim of error with the ALJ's treatment of Dr. Evans' opinions.  In contrast, the ALJ thoroughly explained that he gave great weight to Dr. Evans' opinion both because it was consistent with the record, and because Dr. Evans was an experienced medical consultant who was familiar with the Social Security Act and pertinent regulations.  (Dkt. 9-2, Pg ID 52-53).  Thus, the undersigned finds no error here.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 17, 2016              s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 17, 2016, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                     s/Tammy Hallwood
                                     Tammy Hallwood
                                     Case Manager
                                     (810) 341-7887
                                     tammy_hallwood@mied.uscourts.gov